UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 DEC 14 PM 2:43

CLERK

BY____KP____
DEPUTY CLERK

| | | |
|---|---|---|
| SALVATORE J. PROVETTO, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Case No.: |
| | ) | 2:23-CV-707 |
| **BLUE CROSS AND BLUE SHIELD** | ) | |
| **OF VERMONT and** | ) | |
| **DAWN SCHNEIDERMAN,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COMES plaintiff, Salvatore (Sonny) J. Provetto, by and through his attorneys, Cleary Shahi & Aicher, P.C., and alleges as follows:

## NATURE OF ACTION

1.      This suit is for the violation of plaintiff's statutory, constitutional and common law rights. Plaintiff is a licensed independent clinical social worker (LICSW) and as a former law enforcement officer, provides mental health services to law enforcement officers particularly those who have experienced trauma. Frequently law enforcement officers are more apt to seek treatment and care from a therapist who has law enforcement background, and plaintiff has been well received by officers in need of his services. Plaintiff has received national and international recognition for his work and in 2018 became the founder of the Vermont Center for Responder Wellness.

2.      Effective July 6, 2017, the Vermont Legislature amended the Workers' Compensation Act to provide workers' compensation coverage for the treatment of Post-Traumatic Stress Disorder (PTSD) and other mental health conditions experienced by

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

first responders on the job. (21 V.S.A. §601). Under the new law, police officers, firefighters, rescue and ambulance workers have broader access to workers' compensation benefits. The amendment was in response to a Vermont Supreme Court decision that had limited the ability of first responders to receive workers' compensation benefits for job-related mental health issues such as PTSD. Vermont was the first State to enact such a change to favorably treat first responders.

3.     Plaintiff advocated for the passage of the new law, testified before the Legislature, and publicly pressed for expanded insurance coverage for first responders' mental health needs. In 2018, Florida and Washington followed Vermont's example and more states considered similar laws which were adopted in California, Connecticut, Idaho, Louisiana, Nevada, New Hampshire, New Mexico, New Hampshire, Oregon and Texas. Plaintiff was and continues to be a prominent advocate for local and national awareness of the mental health needs of first responders. The recognition of the mental health needs of first responders and increased treatment meant rising costs for the insurance industry.

4.     Defendant Blue Cross and Blue Shield of Vermont ("BCBSVT") is a health insurer that is dominant in Vermont and part of a nationwide network of affiliated Blue Cross Blue Shield insurers that maintain a monopoly (collectively referred to as "Blue Cross"). Blue Cross recently agreed to pay $2.7 billion to avoid the trial of a class action alleging Blue Cross blocked competition in violation of the Sherman Antitrust Act, 15 U.S.C. §§1–3. *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070 (11th Cir. 2023).

5.    Plaintiff was a provider participant with BCBSVT pursuant to a Professional Services Agreement executed in 2012 (the "PSA"). The PSA term was for one year and was automatically renewed annually. In October 2018, BCBSVT started an audit of plaintiff's records and terminated the PSA in May 2019 for minor, technical reasons many of which stemmed from plaintiff's disability as visually impaired for which BCBSVT refused to provide any reasonable accommodation. Plaintiff exhausted his contractual remedies by way of an appeal and arbitration to no avail.

6.    Under BCBSVT policies, plaintiff became eligible for re-credentialing after three years of termination of the PSA. Despite meeting the credentialing criteria, BCBSVT on December 12, 2022, declined to consider plaintiff's application, declaring: "[t]hough our Provider Policies allow for providers that have been terminated for cause to apply for re-enrollment three (3) years from the date of the initial termination, we are not bound by policy or by law to accept any such applications."

7.    BCBSVT's declaration that the largest and the dominant health insurer in Vermont can disregard credentialing of providers at its whim is consistent with its monopoly and belief that "it is above the law." However, BCBSVT's refusal to re-credential plaintiff violated his statutory, constitutional and common law rights. BCBSVT targeted plaintiff in 2018 for his advocacy of first responders and exploited his disability to blame him for minor technicalities that led to the termination of the PSA. As a result, many in law enforcement were deprived from plaintiff's beneficial services. Three years later, BCBSVT's decision to ignore plaintiff's re-credentialing was discriminatory and violated plaintiff's constitutional and common law rights.

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

3

## THE PARTIES

8.      Plaintiff is a resident of Chittenden County, State of Vermont.

9.      Defendant Blue Cross and Blue Shield of Vermont ("BCBSVT") at all relevant times was a Vermont registered domestic non-profit corporation engaged in the business of health services with its principal business office at 445 Industrial Drive, Berlin, Vermont, 05602.  Defendant Dawn Schneiderman at all relevant times was the Vice President and Chief Operating Officer of BCBSVT with her business address at the Berlin office of BCBSVT.

## JURISDICTION

10.      This Court has jurisdiction to address a federal question under 28 U.S.C. §1331. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2).

## FACTS

11.      Plaintiff refers to and incorporates the allegations in paragraphs 1-10.

12.      At all relevant times, plaintiff was and continues to be a Vermont licensed independent clinical social worker (LICSW).  As a former law enforcement officer, plaintiff offered and continues to provide mental health services including psychotherapy to law enforcement officers for trauma experienced by them.  Frequently law enforcement officers are more apt to seek mental health treatment and care from a therapist who has a background in law enforcement, and therefore plaintiff's services were well received in the law enforcement community.  Plaintiff has received national and international recognition for his work and in 2018 became the founder of the Vermont Center for Responder Wellness.

13.     Plaintiff was and continues to be a prominent advocate for local and national awareness of the needs of first responders for mental health services. Plaintiff advocated for the passage of a new law in Vermont in 2017, the first in the nation, that expanded workers' compensation coverage for first responder mental health injuries. (21 V.S.A. §601). Plaintiff testified before the Legislature and publicly pressed for more favorable treatment of first responders with expanded insurance coverage for their mental health needs. In 2018, Florida and Washington followed Vermont's example and more states considered similar laws which were adopted in California, Connecticut, Idaho, Louisiana, Nevada, New Hampshire, New Mexico, New Hampshire, Oregon and Texas. The recognition of the mental health needs of first responders and increased treatment meant rising costs for the insurance industry.

14.     In 2012, plaintiff and BCBSVT entered into a Professional Services Agreement (the "PSA") whereby plaintiff was permitted to participate as a provider in the treatment and care of BCBSVT subscribers. The PSA term was for one year and it was automatically renewed for one-year terms. Plaintiff met the credentialing requirements for a provider in 2012 and the subsequent years. Other than his deteriorating vision which could be addressed by reasonable accommodations, plaintiff's practice and *modus operandi* remained the same.

15.     In October 2018, BCBSVT started an audit of plaintiff's records and that process led to the termination of the PSA in May 2019 for minor, technical reasons many of which stemmed from plaintiff's disability as visually impaired. BCBSVT refused to

provide reasonable accommodations for plaintiff's disability.  Plaintiff exhausted his contractual remedies by way of an appeal and arbitration to no avail.

16.    Under BCBSVT policies, plaintiff became eligible for re-credentialing after the passage of three years from the termination of PSA.  Despite meeting the credentialing criteria, BCBSVT on December 12, 2022, declined to even consider plaintiff's application. BCBSVT declared "[t]hough our Provider Policies allow for providers that have been terminated for cause to apply for re-enrollment three (3) years from the date of the initial termination, we are not bound by policy or by law to accept any such applications." BCBSVT added that its decision was not subject to an internal appeal process.  The December 12, 2022, letter was issued by Defendant Dawn Schneiderman as the Vice President and Chief Operating Officer of BCBSVT.

## COUNT ONE
## (DISCRIMINATION IN VIOLATION OF AFFORDABLE CARE ACT AND REHABILITATION ACT)

17.    Plaintiff refers to and incorporates the allegations in paragraphs 1-16.

18.    Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. §§ 18116 *et seq*, provides that "an individual shall not ... be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." (42 U.S.C. § 18116(a)).  Section 1557 incorporates section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq*., which prohibits a program or activity receiving federal funds from excluding or discriminating against persons based on disability. (29 U.S.C. § 794(a)). To establish a prima facie claim under Section 504, plaintiff must establish that: (1) he is a

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

"handicapped person[s]" as defined; (2) he is "otherwise qualified to participate in the offered activity or benefit"; (3) he was "excluded from such participation solely by reason of [their] handicap"; and (4) the program receives federal funds. *See Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019)(citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)).

19.    Plaintiff is a handicapped person as defined in the Rehabilitation Act because his vision is severely impaired.  He is otherwise qualified to participate as a provider through BCBSVT but was excluded solely because of his handicap.  On information and belief, BCBSVT acts as a conduit for Medicare funds, performing various functions and ultimately distributing the funds. BCBSVT additionally receives federal fund payments for administrative expenses. *See Bernard B. v. Blue Cross and Blue Shield of Greater N.Y.*, 528 F.Supp. 125, 132 (S.D.N.Y.1981), *aff'd,* 679 F.2d 7 (2d Cir.1982) (allegations that defendant received payments from Medicare were sufficient to allow plaintiff's claim under the Rehabilitation Act to survive a motion for dismissal).

20.    BCBSVT has conceded that it is subject to the anti-discrimination provision of the ACA:

> Section 1557 of the Affordable Care Act prohibits discrimination in health care on the basis of race, color, national origin, age, disability and sex (including gender identity and sexual orientation). Pursuant to this and other federal and state civil rights laws Blue Cross VT does not discriminate, exclude, or treat people differently because of these characteristics. *These statements apply to our employees, customers, business partners, vendors and providers.*

(BCBSVT Provider Handbook, Section 1, emphasis added).

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

7

21.    BCBSVT discriminated against plaintiff by its refusal on December 12, 2022, to consider plaintiff's application for re-credentialing. No valid reason was offered by BCBSVT which essentially claimed to be able to do as it pleased because it was above the reach of the law. As plaintiff is qualified to be re-credentialed, the sole reason for BCBSVT decision not to consider his application was his visual impairment disability—the basis for BCBSVT's termination of the PSA in 2019.

22.    As a result of BCBSVT's discriminatory conduct, plaintiff has suffered significant damages by way of loss of income, past and future, for his inability to treat patients who are covered by BCBSVT. Plaintiff seeks recovery of economic losses according to proof, attorney's fees, costs, interest and such other relief as may be available.

## COUNT TWO
### (VIOLATION OF PROCEDURAL DUE PROCESS CLAUSE–PROPERTY INTEREST, 42 U.S.C. §1983)

23.    Plaintiff refers to and incorporates the allegations in paragraphs 1-22.

24.    42 U.S.C. §1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

25.    "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978).

26.    The Second Circuit has noted that "[f]or the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).

27.    After the elimination of the federal individual mandate under the Affordable Care Act by Congress (26 U.S.C. §5000A©), Vermont implemented an individual mandate at the state level.    Effective January 1, 2020, Vermont requires, subject to certain exceptions, that its residents over the age of 18 acquire health insurance coverage and verify it in their tax returns. (32 V.S.A. §10453). The mandated insurance coverage must include mental health care:

        (a)    It is the goal of the General Assembly that treatment for mental conditions be recognized as an integral component of health care, that health insurance plans cover all necessary and appropriate medical services without imposing practices that create barriers to receiving appropriate care, and that integration of health care be recognized as the standard for care in this State.

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

(8 V.S.A. §4089b(a)).

28.     BCBSVT is the largest of the two insurers that offer health insurance coverage in Vermont.  BCBSVT insures an estimated 225,000 Vermonters.   Vermont operates its own health insurance exchange, Vermont Health Connect, a platform that allows residents to meet the individual mandate by purchasing individual and family health plans offered by BCBSVT and another smaller insurer, MVP Health Care.  As the Supreme Court described the individual mandate, it "[c]ompels individuals to become active in commerce by purchasing a product, . . . ." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 552, 132 S. Ct. 2566, 2587, 183 L. Ed. 2d 450 (2012).

29.     BCBSVT is part of a nationwide network of affiliated Blue Cross Blue Shield insurers that maintain a monopoly (collectively referred to as "Blue Cross").  Blue Cross recently agreed to pay $2.7 billion to avoid the trial of a class action that alleged Blue Cross blocked competition in violation of the Sherman Antitrust Act, 15 U.S.C. §§1–3. *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070 (11th Cir. 2023).

30.     The State of Vermont has enabled and supported the monopoly and market domination of BCBSVT.  With the recent regulatory approval of a merger with the much larger Michigan Blue Cross Blue Shield that insures about 5.2 million people in Michigan and other states, the power and dominant position of BCBSVT in Vermont has been enhanced.

31.     BCBSVT is a willing participant in a joint venture with Vermont whereby the populace that is financially able to buy insurance is required to purchase coverage from BCBSVT, the largest and dominant insurer out of the two carriers listed on Vermont Health

Connect. BCBSVT's function in Vermont is primarily to serve the State's individual

mandate and accordingly engages in a mutually beneficial venture with the State whereby

the State's individual mandate can be realized and BCBSVT is essentially given a

monopoly over the market of the Vermonters who are able to purchase health insurance.

32.     BCBSVT is highly regulated by the State. *See e.g. In re Blue Cross*, 2022

VT 53, ¶ 15, 288 A.3d 160, 166 (Vt. 2022)("The statute requires the GMCB to 'approve,

modify, or disapprove a rate request within [ninety] calendar days after receipt of an initial

rate filing.' 8 V.S.A. § 4062(a)(2)(A)."); *In Re: Affiliation of Blue Cross and Blue Shield*

*of Vermont and Blue Cross Blue Shield of Michigan Mutual Insurance Company*, 2023 WL

6931947. BCBSVT's operations including the rates charged subscribers, the selection of

providers and their reimbursements are entwined with the State's policies of individual

mandate and insurance regulation.   BCBSVT's credentialing policy states in part that it

uses state regulations as a standard for the credentialing process:

> Blue Cross and Blue Shield of Vermont (BCBSVT or the Plan) evaluates and selects licensed independent practitioners to provide care to its members through the credentialing process. Upon application and at least every three years thereafter, the Plan verifies and evaluates practitioner credentials. This process ensures that practitioners participating in the Plan's network are qualified and competent to practice in their respective specialties and that they meet the Plan's standards for performance and delivery of high-quality clinical care and services.

> Through a well-defined process, the Plan completes an initial verification of credentials before entering into a contractual relationship with providers. BCBSVT completes full credentialing prior to listing a health care practitioner in any marketing or member materials, such as provider directories. BCBSVT bases this process on standards set forth by the National Committee for Quality Assurance (NCQA), the State of Vermont in Rule H-2009-03, and the Centers for Medicare and Medicaid Services (CMS) in Chapter 6 of the Medicare Managed Care Manual.

(Practitioner Credentialing Policy, Revised 12/2021).

33.    The joint activity with the State to meet the individual mandate is tantamount to the delegation to BCBSVT the traditional state function of police powers to regulate the welfare of its residents. The individual mandate is such an exercise of the state's police powers. *Nat'l Fed'n of Indep. Bus. v. Sebelius*,567 U.S. 519, 557, 132 S. Ct. 2566, 2590–91, 183 L. Ed. 2d 450 (2012)(holding that individual mandate could not be supported under the Commerce Clause as it was a state police power: "The Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions. Any police power to regulate individuals as such, as opposed to their activities, remains vested in the States.").

34.    By shifting the responsibility to BCBSVT to facilitate the individual mandate with insurance products and rates that are workable for the public, the State's delegation is akin to other instances where private entities like prison management contractors are treated as state actors. *See e.g. Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *3 (D. Vt. Feb. 5, 2007)("Indeed, it has been held that a private corporation performing the traditional state function of operating a prison acts under the color of state law for the purposes of § 1983."); *Wiley v. Baker*, No. 2:20-CV-154, 2022 WL 3045042, at *11 (D. Vt. June 10, 2022), report and recommendation adopted, No. 2:20 CV 154, 2022 WL 3042140 (D. Vt. Aug. 2, 2022).

35.    The decision not to consider plaintiff's application for re-certification was made by defendant Dawn Schneiderman, the Vice President and Chief Operating Officer of BCBSVT on December 12, 2022. Defendant Schneiderman's decision to treat the

Cleary Shahi & Aicher
110 Merchants Row
Post Office Box 6740
Rutland, VT 05702-6740

(802) 775-8800

12

consideration of provider certification applications at the whim of BCBSVT reflected the insurer's policy.

36.    "The right to follow a chosen profession is a property interest protected by the Fifth and Fourteenth Amendments." *Lange-Kessler v. Dep't of Educ. of the State of N.Y.*, 109 F.3d 137, 140 (2d Cir. 1997).  The refusal of BCBSVT to credential plaintiff as a provider for services to a large segment of the State's population was a significant impingement of plaintiff's right to pursue his profession as a licensed independent clinical social worker, a protected right under state law.

37.    Defendants' failure to afford plaintiff notice and the opportunity to meet violated plaintiff's procedural due process rights. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)).  The refusal to consider plaintiff's credentialing application substantially deprived him of his ability to engage in his chosen profession which necessarily requires access to the insured population of the State.

38.    As a result of defendants' violation of plaintiff's due process rights, plaintiff suffered loss of income and will have future losses and other consequential damages. Plaintiff seeks recovery of compensatory damages as well as his attorney's fees, interest and costs.

## COUNT THREE
## (VIOLATION OF SUBSTANTIVE DUE PROCESS CLAUSE, 42 U.S.C. §1983)

39.    Plaintiff refers to and incorporates the allegations in paragraphs 1-38.

40.    "Substantive due process protects individuals against government action

that is arbitrary, conscious-shocking and oppressive in a constitutional sense, but not against governmental action that is incorrect or ill-advised. (Citations)" *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). *See also Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)(requiring evidence that official action was "arbitrary or irrational or motivated by bad faith"), *cert. denied*, 496 U.S. 941, 110 L. Ed. 2d 671, 110 S. Ct. 3225 (1990). "To plead a substantive due process claim, a plaintiff must assert (1) a constitutionally cognizable property interest and that (2) the defendant's alleged acts "were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *McCaul v. Ardsley Union Free Sch. Dist.*, No. 12–2300–cv, 2013 WL 673751, at *1 (2d Cir. Feb. 26, 2013) (slip copy)(citing *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d. Cir.2006)).

41.     BCBSVT's decision to decline at its whim any credentialing application and thereby substantially impair plaintiff's ability to pursue his chosen profession, was arbitrary, conscious-shocking, irrational, oppressive and motivated by bad faith in a constitutional sense.  As a result, plaintiff suffered loss of income and will have future losses and other consequential damages.  Plaintiff  seeks recovery of compensatory damages as well as his attorney's fees, interest and costs.

## COUNT FOUR
### (COMMON LAW RIGHT TO FAIR PROCEDURE)

42.     Plaintiff refers to and incorporates the allegations in paragraphs 1-41.

43.     The common law doctrine of fair procedure protects against arbitrary decisions by private organizations under certain circumstances. (*Potvin v. Metropolitan Life*

*Ins. Co.* (2000) 22 Cal.4th 1060, 1066, 95 Cal.Rptr.2d 496, 997 P.2d 1153). Private entities may not expel or exclude qualified persons without acting in a manner that is substantively rational and procedurally fair. *Id.* 1066-1072. Thus when an insurance company maintains a list of preferred provider physicians to render medical services to its insureds and removes a physician from its list, a significant public interest is affected. *Id.* at 1070. The obligation to provide a fair procedure arises when the insurer possesses power so substantial that the removal significantly impairs the ability of an ordinary, competent physician to practice medicine or a medical specialty in a particular geographic area. *Id.* at 1071.

44.    Defendants violated the common law doctrine of fair procedure by arbitrarily refusing to credential plaintiff and thereby significantly impair his ability to practice psychotherapy in Vermont. Public interest is implicated particularly by the nature of plaintiff's services to first responders. As a result of defendants' actions, plaintiff suffered loss of income and will have future losses and other consequential damages. Plaintiff seeks recovery of compensatory damages as well as his attorney's fees, interest and costs.

## COUNT FIVE
### (INTERFERENCE WITH CONTRACT)

45.    Plaintiff refers to and incorporates the allegations in paragraphs 1-44.

46.    "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the

prospective relation." (Restat 2d of Torts, § 766B). Defendants' conduct as detailed above constituted intentional interference with plaintiff's prospective employment as a therapist. Defendants' conduct was not privileged or otherwise protected from liability for intentional interference with contract. Defendants' conduct was malicious and motivated by ill will.

47.     As a result of defendants' conduct, plaintiff has suffered loss of income and will have future losses and other consequential damages. Plaintiff seeks recovery of compensatory damages, punitive damages as well as his attorney's fees, interest and costs.

WHEREFORE, plaintiff seeks recovery of compensatory damages, nominal damages, punitive damages, interest, attorney's fees, costs and such other relief as may be proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Dated this 14th day of December, 2023.

Respectfully Submitted,

Kaveh S. Shahi, Esq.
Cleary Shahi & Aicher, P.C.
110 Merchants Row, Ste. 3
Rutland, Vermont 05701
(802) 775-8800
kss@clearyshahi.com
*ATTORNEYS FOR PLAINTIFF*